**COMPANIA EMBOTELLADORA DEL PACIFICO, S.A. Plaintiff,**

v.

**PEPSI COLA COMPANY Defendant.**

**No. 00 CIV. 7677(RO).**

United States District Court,
S.D. New York.

March 13, 2003.

Shaw Pittman, LLP by Kenneth A. Caruso, Esq., Matthew A. Anzaldi, Esq., New York City, for Plaintiff.

Solomon, Zauderer, Ellenhorn, Frischer & Sharp by Louis M. Solomon, Esq., Michael B. Smith, Esq., New York City, for Defendant.

### OPINION AND ORDER

OWEN, District Judge.

Plaintiff Compania Embotelladora Del Pacifico, S.A. (hereafter CEPSA), a Peruvian bottling corporation, in Lima, Peru was owned and operated by members of the Heredia family since its formation in 1952 until November 19, 1999, when it fell on hard times and creditors put it in involuntary liquidation under Peruvian Law. It had a bottling contract with defendant Pepsi Cola Company. In Peru, when a company enters into liquidation, a Liquidator is appointed who completely supplants the owners and operators.[1] Essentially the Liquidator, on behalf of the creditors, is to take inventory, establish the extent of the company's capital, deal with payables and receivables ("credits"), and assume such commitments as are ap-

---

1. General Companies Law, Article 413 reads in part: At the time of the resolution of dissolution the agency of directors, administrators, managers and representatives in general ceases, with the liquidators assuming the functions[.]

propriate to wind down and close the business. General Companies Law Article 416. Peru's Capital Restoring Law, Article 77, in accord with the foregoing provides that the "attributes and authorities of the Liquidator" are essentially to safeguard the interest of insolvent estates, to dispose of its property while further providing that the Liquidator may "provisionally" continue the business *as agreed by the Meeting of Creditors* " (emphasis supplied). A Liquidator under said Article 77 is specifically given the power to file *criminal* complaints with the prosecutor's office if fraudulent acts of management or fraudulent bankruptcy shall appear "which fact, shall be made known to the meeting creditors." The Liquidator is not anywhere, however, specifically given the power to file civil actions absent a majority vote of the creditors' interests at a full Meeting of Creditors at which a quorum is present.[2] This requirement is in sensible accord with a liquidation situation, where a Liquidator must consult with the creditors before filing a civil action that may put creditors' interests at further risk of loss from major litigation expense, or successful counterclaims, or other unexpected drains on an already damaged estate.

Against this background, some eleven months after the filing for liquidation and dissolution, it appears that Liquidator Cabrerizo was "invited" to a meeting or conferences with members of the Heredia family without notification to anyone else and, with their personal urging and personal financing, caused the instant extensive $300,000,000 complaint to be "secretly"[3] prepared in New York and "secretly"

filed in this Court on Wednesday, October 11, 2000. The following day, Thursday, there was a meeting in Lima, Peru of the Committee of Creditors of the plaintiff. Two of the three creditors of the Committee were present, Banco Latino and Banco Continental, together with Liquidator Cabrerizo. On the agenda prepared by the Liquidator was the "Proposal to retain attorneys for PEPSICO INTERNACIONAL lawsuit." Liquidator Cabrerizo told the two banks, according to the minutes of the meeting, that he had not only been "invited" to the meeting with the Heredias but *they* told *him* of the "possibility" of filing legal action against PEPSICO INTERNACIONAL, that the filing of the complaint "must be done secretly" and that INDECOPI, a quasi governmental board, with supervisory powers in bankruptcy cases would request a date for meeting of all creditors to consider "Retaining a Law Firm for PEPSICO INTERNACIONAL Lawsuit." Obviously, all of these statements speaking of future actions were false, for the action had been in fact filed the day before at the instigation of and with the financing of the Heredias. As observed earlier the Heredias, as ousted owners and operators, had *no* power to start any lawsuit and the Liquidator had no authority to commence the action without consent of the majority at a meeting of all creditors.[4] The Committee of Creditors, being of the erroneous belief that nothing had yet been filed, asked the Liquidator to make a presentation of the "possibility and costs of that operation" and they would "call a Meeting of Creditors to take a final decision." It was also

---

**2.** The Liquidator here obviously recognized this limit on his power for he twice sought (though each time failed) to obtain such authority, *see infra.*

**3.** The word "secret" in connection with the preparation and filing this suit was communi-

cated by the Liquidator at at least two meetings in this overall context, *see,* e.g., Minutes of October 12, 2000 and November 16, 2000.

**4.** Which consent, when twice later sought, was both times denied, *see infra.*

agreed, the minutes show, that the Committee was going to "analyze the prestige" of New York counsel it was told *would be* undertaking the lawsuit.

Next, however, at an expanded Meeting of Creditors on November 16, 2000, a month and a half later, Liquidator Cabrerizo now told the meeting that in fact the complaint *had* been filed *before* the prior meeting and that this had been necessary because of "the need to act rapidly and secretly ..." and that he had "taken the decision to sign an agreement with [New York counsel] to file the complaint in the appropriate manner."[5] Liquidator Cabrerizo also "clarified that if the Meeting of Creditors decided not to continue with the proceeding, the agreement contained an unconditional termination clause ... and that ... a decision could be taken to abandon the complaint without any specific reason."[6] The creditors wanted information on the New York law firm and details on the complaint, and agreed to evaluate the proposal and make a decision at a subsequent meeting of the expanded Committee which took place on December 1, 2000. At that meeting, at which a quorum of the creditors' interests were present, two votes

were taken on whether the question of the "continuation" of the proceeding should be delayed to a new meeting. Even these procedural votes failed, not mustering a majority of the creditors' interests present.

The next relevant event was on March 30, 2001, where at a Meeting of Creditors of almost 80 percent of the creditors' interests, and a quorum being present, there were presentations from both Liquidator Cabrerizo[7] and a representative of PEPSICO, both being extensively reported in the minutes of the meeting.[8] In any event, a vote at that meeting fell short of the majority needed to even authorize taking a vote on the continuation of this action, there being only 48 percent of creditors' interests in favor.

Accordingly on July 11, 2001, a duly constituted Creditor's Committee met[9] and taking note of the fact that this action against PEPSICO had twice failed confirmation before a full Meeting of Creditors, the Committee voted to advise the Liquidator that the action was no longer supported nor was it to be continued. I note that this was what the Liquidator had told

5. Thus confirming that the Liquidator knew of the filing at the time he made the false statement to the Creditors Committee on the prior October 12 that the complaint had not been filed.

6. This representation was not honored later following two full creditors' meetings and a Committee of Creditors meeting, *see infra*.

7. Who again falsely stated that the filing of the complaint on October 11, 2000, had been reported to the Creditor's Committee the next day, October 12, 2000.

8. During this meeting, when a vote was proposed, Jean Casusol, a representative of INDECOPI, who was present, expressed his view that such a vote would not have any legal effect because the Liquidator had the power to bring the action in the first place.

This view which plaintiff's Memorandum at p. 7 asserts as a "rul[ing]" by INDECOPI, is contrary to the record which states it merely as a "belief" and even that "belief" of Casusol the Court notes was, on appellate review in the INDECOPI process, held to be "incorrect," the Tribunal stating, "In so holding the Tribunal ... reconfirmed that the Liquidator must act according to the creditors' will ...."

9. The three members were Banco Latino, Interbank and Banco Continental. Plaintiff contends in its Memorandum, p. 8, that the meeting was a nullity because of some alleged unspecified assignment of Banco Latino's claims to Interbank disqualifying both to act. This claim, however, was rejected and declared to be "baseless" by INDECOPI on September 12, 2001 when this issue was raised by creditor Trecedieciocho to set aside the Committee's determination on July 11, 2001.

the creditors on November 18, 2000 they had a right to do and it had happened, and that, I conclude now, was the end of it.

In sum, this action was unauthorized. The Liquidator did not have the authority to commence it, and the creditors on July 11, 2001 declared it at an end.[10]

Accordingly, the motion to dismiss is granted.

So ordered. A formal order may be submitted on notice if either party desires.

---

10. The Court is in receipt of a number of letters submitted after the motion was argued on November 2, 2001. These were obviously occasioned by plaintiff's purported belated activity in Peru following July 11, 2001 in an effort to breathe life back into a dead case. I decline to accept or consider these in view of the fact that this action was duly terminated by the creditors on July 11, 2001, not only under the law, but as the then Liquidator had told the creditors on November 16, 2000 they had a right to do, *see supra*. Nor, in this consideration can one shake the disquieting circumstances of the secret Liquidator/Heredias relationship in the commencement of *this* action.