SUMMARY ORDER
UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, VACATED AND REMANDED.
The appellant, Compañía Embotelladora del Pacifico, S.A. (“CEPSA”), a Peruvian corporation in bankruptcy liquidation, appeals from orders of the district court dismissing its breach of contract action against the Pepsi Cola Company nunc pro tunc to the day of its filing, and denying CEPSA’s motion to join a co-plaintiff. Companía Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co., 249 F.Supp.2d 339 (S.D.N.Y.2003) (hereinafter “Pepsi”).
The long and complicated history of this case is summarized in the district court’s opinion. We will not rehearse it here. We note, however, that: Frist, this case began as a breach of contract action filed by the liquidator of CEPSA, a soda bottling company, following the acrimonious unraveling of its four-decades-long business relationship with Pepsi. Second, the liquidator — who had been duly appointed under Peruvian law by CEPSA’s creditors to manage the liquidation — did not inform the creditors of the lawsuit until well after it was filed, although he did ask them to ratify its continuation at the time he disclosed its existence. Third, the committee of CEPSA’s creditors empowered under Peruvian law to oversee the bankruptcy (the “Junta”) has never formally ratified the bringing of the lawsuit. A subcommittee of creditors repudiated the suit in July 2001, while a second subcommittee of creditors renounced the earlier repudiation and ratified the prosecution of the litigation in May 2002.
In this appeal, CEPSA asks us to confront, among other things, three issues of Peruvian law: (1) whether a bankruptcy liquidator has the inherent authority to file a lawsuit seeking damages on behalf of the estate, without obtaining the creditors’ pri- or approval, through a “junta” or otherwise; (2) whether the continuation of the litigation has effectively been ratified by the creditors following its repudiation by the first subcommittee; and (3)(a) whether CEPSA’s partial assignment of its claims to Financiera de Desarrollo Industrial y Comercial, S.A. (“Fideicosa”) is effective, (b) if so, whether Fideicosa should be joined as a plaintiff in this suit, and (c) if it *425 should, what the effect of such joinder has on the pursuit of this lawsuit.
As for the first question, the district court determined that the liquidator did not have the inherent authority to bring this lawsuit based on two provisions of Peruvian law: Article 416 of the General Companies Law, and Article 77 of the Capital Restructuring Law. Attempting to harmonize the two laws, the court determined that the word “procedural” in Article 416 limits the “representational power” Article 77 grants the liquidator in legal proceedings, such that the liquidator is effectively without substantive authority to file civil lawsuits absent the creditors’ advance permission. Pepsi, 249 F.Supp.2d at 340.
Reviewing the district court’s determination of foreign law de novo, Curley v. AMR Corp., 153 F.3d 5, 11 (2d Cir.1998), we disagree with that reading of the language of Article 77. The law grants the liquidator “full agency” to “safeguard the interests of the bankruptcy estate or the insolvent party, in court or out of it.” Capital Restructuring Law, Article 77(1). Article 77 also incorporates Law No. 26,-539, which grants corporate managers “authority of representation in legal proceeding,” and points, in turn, to Article 75 of the Code of Civil Procedure, which refers to the power “to file suits.”
CEPSA’s liquidator was also contractually authorized to file the lawsuit. Clause Nine of the Liquidation Agreement between the liquidator and the Junta permits the liquidator “[t]o represent CEPSA in all legal acts performed on its behalf, whether judicial or non-judicial, merely administrative acts, or those that require a special power of attorney ... without any limitation or restriction save those that are established in this Agreement.”
This interpretation of the liquidator’s authority is consistent with a decision of Peru’s National Institute for the Defense of Competition and Protection of Intellectual Property (“INDECOPI”), a government agency with jurisdiction over various economic matters, including bankruptcy. In the May 29, 2002 decision, that agency’s highest Tribunal noted that the Junta was “free” to “decid[e] on the confirmation of the lawsuit ... if it deems convenient.” The Tribunal at no time so far as we are. aware suggested that the liquidator lacked authority to file the lawsuit in the first instance; its statements seem to assume that the liquidator had such authority. We therefore conclude that the liquidator had the authority to file the lawsuit against Pepsi absent a contrary instruction from the creditors.
As for the second issue of Peruvian law raised before us, we note that the liquidator’s actions were challenged, not by the Junta, but by the Special Creditors Committee delegated by the Junta to oversee the company’s day-to-day affairs. That subcommittee voted on July 11, 2001 to express its “disagreement with the continuation” of the lawsuit against Pepsi. The district court found that this resolution was binding, and that it, in effect, “was the end of it.” Pepsi, 249 F.Supp.2d at 342. CEPSA argues that the subcommittee’s July 11 vote was advisory only, and that in any case it was nullified by a second subcommittee elected to replace the first in May 2002. In addition, CEPSA contends that the Junta impliedly ratified the lawsuit — thereby overruling the first subcommittee — by voting in eai’ly 2002 to appoint a new liquidator who promised to pursue the lawsuit.
We think it unwise to decide this question on the basis of the information before us. It seems to us that the ultimate question is whether the creditors of CEPSA, in whose interest the liquidation proceedings are being conducted and this action was brought, have validly authorized the continuation of this litigation. We have “repeatedly noted the importance of ex *426 tending comity to foreign bankruptcy proceedings.” Finanz AG Zurich v. Banco Economico S.A, 192 F.3d 240, 246 (2d Cir.1999). The INDECOPI Tribunal held on May 29, 2002, that the Junta was “free to meet again with the purpose of deciding on the confirmation of the lawsuit.” We conclude that to assure ourselves that this lawsuit is being maintained by CEP-SA with the approval of CEPSA’s creditors, the Junta itself — not the Special Creditors Committee — must, within a short but reasonable period of time to be established by the district court, formally give its approval in order for it to continue this lawsuit. If the Junta does not do so within the time allotted, the district court may again dismiss this lawsuit as to CEPSA.
The final complication relates to the effectiveness of CEPSA’s partial assignment of its claims to Fideicosa. Although the district court denied as moot the motion to add Fideicosa as a co-plaintiff, the court never reached the issue of the validity of the assignment, which is now being litigated before the courts of Peru. In light of our remand, the motion to add Fideicosa is no longer moot; nevertheless, the district court may defer ruling on this motion until the Peruvian courts resolve the validity of CEPSA’s partial assignment.
We therefore hereby VACATE the judgment of the district court and REMAND this matter with instructions for the court to stay the proceedings for a short, reasonable period of time to permit the Junta to vote on the continuation of the lawsuit. If the Junta ratifies the continuation of the lawsuit within the allotted time, CEPSA may, of course, pursue it. Otherwise, CEPSA shall be dismissed as a plaintiff.
The court shall also reconsider its dismissal of the motion to join Fideicosa as a co-plaintiff, bearing in mind that the validity of CEPSA’s partial assignment of its claims is the subject of pending legal proceedings in Peru. We owe those proceedings deference and the court, therefore, may defer its ruling on the motion until the Peruvian courts determine the validity of the assignment.
Jurisdiction will be restored to this Court without a new notice of appeal when any of the parties furnishes a copy of the district court’s ruling on remand to the clerk of this Court. The case shall be referred to this panel upon its return to this Court’s jurisdiction. At that time, the Court will determine whether and to what extent further briefing will be needed. After any further order by this Court, the parties will be afforded a renewed opportunity to seek rehearing and rehearing in banc.